**ESTILL COUNTY STONE COMPANY,**
Appellant,

v.

**C. Hoge HOCKENSMITH et al., Appellees.**

Court of Appeals of Kentucky

May 3, 1957.

Rehearing Denied Oct. 4, 1957.

Elwood Rosenbaum, Lexington, for appellant.

H. M. Shumate, Shumate & Shumate, Irvine, for appellees.

SIMS, Judge.

This is a suit by C. Hoge Hockensmith and his wife, Nell, against the Estill County Stone Company, hereinafter referred to as the Company, for an accounting under a contract of employment for 30% of the net profits of the Company from February 4, 1954, to February 4, 1955. The trial judge in a well considered opinion held the Company was indebted to plaintiffs in the sum of $2,618.80, and it appeals.

Prior to February 1954, Hoge and his wife had worked for the Company for four years at a joint salary of $125 a week. He was general manager and superintendent of operations at the Company's quarry in Estill County, while she did the clerical work at the quarry. On February 4, 1955, the parties agreed on a new contract whereby Hoge was to continue as manager and superintendent of the quarry and his wife was to do the clerical work at the quarry for a combined salary of $75 per week and at the end of the year plaintiffs were to receive one-third of the Company's profits before taxes. Hoge drew up a memorandum to this effect, signed it and mailed it to Austin H. Ross, President of the Company, at its home office in Louisville. There is practically no dispute between the parties that this was their agreement, although Ross filed an unintelligible memorandum

containing certain abbreviations and figures thereon, claiming this to be the memorandum of their contract. This Ross memorandum contained a figure of $10,000, which he testified represented a fixed charge of expenses for the home office. However, Ross does not seriously insist that this $10,000 should now be considered as fixed expenses in arriving at the annual profits of the Company.

The trial judge set out in detail his findings of fact and conclusions of law in which he held the Company had earned net profits of $8,432.66 and gave plaintiffs 30% thereof, $2,529.80, to which he added an item of $89 not in dispute, and adjudged plaintiffs should recover $2,618.80. While the memorandum of the contract states plaintiffs are to get one-third of the net profits for the year involved, the complaint sought only to recover 30% thereof.

A large record is before us, replete with figures and exhibits of every kind, ranging from daily diaries, letters and office communications to income tax returns filed by defendant, hence it is patent that if we should take up and discuss every item of difference between the parties, this opinion would be extended to an unreasonable length with no resultant benefit to the profession. Therefore, we have decided only to mention the principal and material differences between the parties and will ignore their small differences where no large amounts of money are involved.

While the memorandum of the contract is dated February 4, 1954, and recites it extends to February 4, 1955, the Company's fiscal year began on February 1st. Therefore, we will treat the contract as beginning February 1, 1954, and ending January 31, 1955.

The Company complains that plaintiffs ignored an inventory of $5,386.50 on hand February 1, 1954, in arriving at the net profits and they placed such inventory at $300. Mr. Ross, the President of the Company, in testifying as to what this inventory

was, did not give any amounts, but merely stated it was sufficient to sustain the business, while Hoge testified it was between $300 and $400. True, the Company's income tax report showed this inventory as $5,386.50, but from the record as a whole we cannot regard this income tax report as being too accurate, and we agree with the chancellor that $300 represents the fair value of the inventory.

There is considerable discrepancy between the amounts the parties insist to be the correct year-end inventory. Plaintiffs' testimony puts this inventory at $12,117.47, while the Company's income tax return lists it at $7,282.50. Hoge's testimony is to the effect that his figures were agreed upon by him, Ross, the Company's President, and Denny McKinney, the Superintendent of the Company, who succeeded Hoge. As did the trial judge, we regard this to be more convincing testimony than the income tax return. Many items went into this inventory besides the 7,400 tons of stone at $1 per ton, and as stated in the preceding paragraph, we are not too favorably impressed with the figures in the Company's income tax returns.

The next serious difference between the parties concerns the amount of depreciation of the equipment, which the Company claims is $12,499.88, and which plaintiffs claim to be $11,000. At best, depreciation must be arrived at through an estimate and cannot be determined with mathematical certainty. From the record before us we cannot say the trial judge erred in fixing the depreciation at $11,000, which was the sum fixed by the Company for the previous year.

■■ The Company argues its expenses for insurance, taxes, plant repairs and interest amount to $6,617.88, while plaintiffs argue these items only amount to $4,750. It may be noted here that the trial judge added a tax item of $441.97 to plaintiffs' total of $4,750, which additional sum represents 2% of the company's payroll of $22,098.31 for its social security tax. It must be admitted that the plaintiffs' testimony as to these

items was not too accurate and some of the items were estimated. On the other hand, Ross was unable to separate to our satisfaction the expenses of defendant Company from that of the Falls City Stone Company, which he also operated. The defendant Company did show the sums it claims for these various items were set out in its income tax report. However, it seems to have been the custom of the Company to wait until near the close of the year to enter such items of expense as it chose on the books of the Company. We cannot say the Company's figures on these items were any more accurate than those of plaintiffs, and surely we cannot say that the trial judge's finding on these items was clearly erroneous, which we would have to do under CR 52.01 in order to reverse the judgment.

The Company complains because the trial judge accepted plaintiffs' figure of $1,345 as representing the expense in operating defendant's home office. It argues this sum will not pay the salary of a bookkeeper and that only $45 was allowed for the traveling expense of its officers. But it is admitted that defendant company was largely financed by other companies operated from the same office and which had the same officers as did defendant Company. We gather from the record that neither accurate nor separate accounts were kept of the expenses of these various companies. Defendant makes a feeble argument in support of its contention that as its memorandum of the agreement contained an item of $10,000, which Ross construes as meaning that sum would be allowed for the expense of the home office, the trial judge should have fixed the office expenses at $10,000. We doubt if any court would consider an office expense in that sum as reasonable in arriving at the profits of a company when its entire annual payroll was only $22,000, and the total business for the year was just under $75,000.

The Company gave due notice it would take the deposition of Harry Weleken, a certified public accountant. For some reason, neither plaintiffs nor their counsel attended the taking, but on the trial plaintiffs' exception to the deposition was sustained on the ground that the witness did not testify from the Company's books but did so from a memorandum he had made. The court erred in this ruling, but for the reason hereafter shown the error was not prejudicial to the Company.

Mrs. Unglaub, the Company's bookkeeper, testified that she kept a full and complete sets of books for the Company. She stated she was present when Weleken gave his deposition, and the books were used by him in his testimony. Weleken testified that while the Company's tax return and the audit of its books were not prepared by him, they were made by a senior accountant in his office under his supervision. The day he testified Weleken said he went over the books carefully and found the income tax return was in agreement with the Company's books. In his deposition Weleken used a memorandum he had made from the income tax return of the Company which compared the figures on such return with the figures set out in plaintiffs' complaint.

■ The case at bar is distinguishable from Harlan Coal & Coke Co. v. Davidson, 203 Ky. 580, 262 S.W. 936. There, the witness' testimony was excluded because he testified from a statement taken from the books in the absence of the books themselves which were shown to be still in existence. Here, Weleken testified from a statement he had prepared from the books and the books were present and could have been used for the purpose of cross-examining him. In Municipal Paving Co. v. Farmer, Ky., 255 S.W.2d 618, 620, we said, " * * * where a fact can be ascertained only by the inspection of numerous documents made up of many detailed statements, a summary of those documents is admissible if prepared and offered by a competent witness who has examined the documents and summarized the results. [Citing cases.]" The Farmer opinion pointed out the summary is admissible only on condition that the documents upon which it is based are

accessible to the opposing party for the purpose of cross-examination.

■ An examination of Weleken's testimony shows the memorandum he had prepared and from which he was testifying was a comparison of the figures in the income tax return of the Company with the figures set out in plaintiffs' complaint. As the income tax return previously had been admitted in evidence by the trial judge, the figures in Weleken's memorandum were already in the record though in not so convenient a form for the trial judge or for this court. Therefore, the Company was not prejudiced by the error of the trial judge in excluding Weleken's testimony and the document from which he testified.

Finding no error prejudicial to the Company's substantial rights, and being of the impression that the judgment of the trial judge is not clearly erroneous, we affirm the judgment.